JUDGE CHIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

       -v-                  :   **08CRIM1092**

STEVEN BYERS, and               :   08 Cr.
JOSEPH SHERESHEVSKY,
    a/k/a "Joseph Heller,"      :
    a/k/a "Josie,"
    a/k/a "Yossi,"              :

               Defendants.     :

- - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 10 2008

### COUNT ONE

(Conspiracy to Commit Securities Fraud
and Mail Fraud)

    The Grand Jury charges:

### RELEVANT PERSONS AND ENTITIES

    1. At all times relevant to this Indictment, WexTrust Capital LLC ("WexTrust Capital") purported to be a globally diversified private equity company specializing in investments in real estate and specialty finance opportunities. WexTrust Capital was headquartered in Chicago and had offices in New York, New York; Norfolk, Virginia; Atlanta, Georgia; Boca Raton, Florida; Nashville, Tennessee; Ramat Gan, Israel; and Johannesburg, South Africa. WexTrust Capital was founded in 2003 and was affiliated with several companies of a similar name, including WexTrust Securities, LLC, a broker-dealer registered

1

with the United States Securities and Exchange Commission ("SEC").

2. At all times relevant to this Indictment, STEVEN BYERS, the defendant, was WexTrust Capital's founder and its Chief Executive Officer.

3. At all times relevant to this Indictment, JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendant, was one of the principals of WexTrust Capital, served as the company's Chief Operating Officer, and helped found WexTrust Securities, LLC. SHERESHEVSKY has two prior felony convictions, including one felony fraud conviction. Specifically, in 1994, he pleaded guilty in United States District Court for the Southern District of New York to one count of conspiracy to commit bank fraud.

## OVERVIEW OF THE SCHEME TO DEFRAUD

4. From in or about May 2005, up to and including in or about August 2008, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, and others known and unknown, raised funds from investors pursuant to a private placement offering, used virtually all of those funds for purposes other than those specified in the private placement memorandum for that offering, and did not disclose this diversion of funds to investors.

5. In furtherance of the scheme, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, and their co-conspirators, sought to and did make materially false and misleading statements, and material omissions, in private placement documents distributed to investors by WexTrust Capital.  As set forth more fully below, BYERS, SHERESHEVSKY, and their co-conspirators falsely represented to investors that more than $9,000,000 raised in a private placement offering in 2005 would be used to purchase seven specifically identified real estate properties that were leased by the U.S. General Services Administration ("GSA"), a federal agency.  In fact, as BYERS, SHERESHEVSKY, and their co-conspirators well knew, WexTrust Capital never purchased the properties identified in the offering documents and the funds raised were used for other purposes not specified in the private placement memorandum and not disclosed to investors.

6. In furtherance of the scheme, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, and their co-conspirators also caused documents to be distributed to investors that failed to disclose SHERESHEVSKY's criminal history, notwithstanding the fact that many of WexTrust Capital's offering documents touted SHERESHEVSKY's role in WexTrust Capital and his professional experience.  For example, in a private placement memorandum for

3

GSA Investors, LLC (the "GSA PPM"), which is described more fully below, SHERESHEVSKY was described as follows: "Mr. Shereshevsky is an executive officer of the Manager and is the Director of Operational Services of WexTrust Asset Management. Mr. Shereshevsky has been involved in real estate and multi-family management for the past 15 years and is a Principal of WexTrust Capital." The GSA PPM did not disclose SHERESHEVSKY's criminal background.

### The GSA Private Placement Fraud

7. On or about November 22, 2005, WexTrust Capital issued the GSA PPM for the purchase and sale of "preferred membership interests" in GSA Investors, LLC.

8. The GSA PPM touted the experience of JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendant, but did not disclose SHERESHEVSKY's criminal background.

9. According to the GSA PPM, GSA Investors, LLC was a company formed to purchase and operate seven commercial properties, located in Wisconsin, Illinois, Indiana and Florida, that were leased to the GSA (the seven properties are hereafter called the "GSA Properties"). The GSA PPM specified that $9.2 million raised from investors, together with a mortgage of approximately $21 million, would be used to purchase the GSA Properties and cover related acquisition expenses. The GSA PPM

4

specified no other uses for the funds raised. In addition, the Operating Agreement for GSA Investors, LLC (the "Operating Agreement"), which was attached as an exhibit to the GSA PPM and purported to govern the operations of GSA Investors, LLC, prohibited the co-mingling of GSA Investors, LLC funds with any other investments or entities. The Operating Agreement also prohibited loaning funds from GSA Investors, LLC to any person or entity. The Operating Agreement was sent to investors in GSA Investors, LLC as an attachment to the GSA PPM.

       10. In truth and in fact, as STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, well knew, the GSA Properties were never purchased by GSA Investors, LLC, and the investor funds raised by BYERS, SHERESHEVSKY, and others, pursuant to the GSA PPM were diverted to other uses not specified in the GSA PPM or the Operating Agreement and not disclosed to investors. In fact, GSA Investors, LLC did not acquire any real property.

       11. In an e-mail dated January 31, 2006, that JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendant, sent to STEVEN BYERS, the defendant, SHERESHEVSKY asked BYERS whether they should "have a plan on to get [GSA] over within the year" and "give back the money" to investors in GSA Investors, LLC. Rather than informing the GSA investors that their investment funds had been diverted to other

uses, however, SHERESHEVSKY and his co-conspirators continued to misrepresent that the funds had been used to purchase the GSA Properties. In fact, in or about 2007 and 2008, WexTrust Capital mailed Internal Revenue Service ("IRS") Schedule K-1 forms to investors in GSA Investors, LLC, that falsely represented income earned from their purported investment in the GSA Properties. As SHERESHEVSKY well knew, no such income was earned because no money was invested in the GSA Properties.

12.   In addition, in or about 2007 and 2008, WexTrust Capital also mailed quarterly "cash flow statements" to investors in GSA Investors, LLC, that falsely reported revenue and expenses associated with their purported investment in the GSA Properties.

13.   In or about 2007 and 2008, WexTrust Capital also mailed quarterly reports to investors in GSA Investors, LLC, that falsely represented that certain capital expenditures existed in connection with the GSA Properties, and that investors had received "distributions" that purported to be excess cash from the operation of GSA Investors, LLC even though no excess cash in fact existed.

14.   More than two years after raising funds from investors pursuant to the GSA PPM, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, and their co-conspirators, still had not informed the investors in GSA Investors, LLC that their

investment money had been diverted and misused.  Instead, in or about mid-2008, BYERS, SHERESHEVSKY, and others, agreed to fabricate a story for the GSA investors to conceal their material misrepresentations in the GSA PPM and the Operating Agreement.

15.  On or about June 17, 2008, in a consensually recorded conversation, STEVEN BYERS, the defendant, discussed with a confidential informant ("CI-1") working at the direction of the Federal Bureau of Investigation, that they should tell investors that WexTrust Capital never received title to the GSA properties, and that they should "blame it on the lawyer, blame it on something."  BYERS also discussed how he would replenish the investor funds in GSA Investors, LLC.  BYERS referred to a "$3 million fee" that JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendant, was getting from WexTrust Capital and said that he (BYERS) had told SHERESHEVSKY that $2.5 million needed to "go back" to GSA or another WexTrust Capital investment vehicle from which investor funds also were diverted.

16.  On or about June 18, 2008, in a consensually recorded meeting, JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendant, told CI-1 about the suggestion made by STEVEN BYERS, the defendant, that WexTrust send a letter to GSA investors, "[p]re-date it like two years," and have the letter falsely state that there was a "title

7

problem" with the GSA Properties.  SHERESHEVSKY also told CI-1 that he planned to buy out some of the GSA investors, that is, "take ... out" for approximately $2 million all the investors in GSA Investors, LLC "that aren't friendly."  SHERESHEVSKY further said he would take out mortgages on his five personal houses for another $2 million and put the proceeds into GSA Investors LLC, and that doing so was "better than somebody going to jail."

17.  Also on or about June 18, 2008, in a consensually recorded meeting, JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendant, again explained to CI-1 that "once we give back the money" WexTrust Capital had raised based on the fraudulent GSA PPM, SHERESHEVSKY and his co-conspirators would avoid a "problem" with investors.

18.  On or about June 24, 2008, in a consensually recorded conversation, STEVEN BYERS, the defendant, and CI-1 discussed the cover story they would tell investors regarding the GSA Properties.  BYERS told CI-1 that WexTrust Capital would have to falsely advise investors that a problem had developed with the title to and ownership of the GSA Properties.  BYERS also acknowledged the prospect of going to jail if the scheme to defraud was discovered: "I'm the CEO . . . so let's say it all blows up alright I'm fucking gone alright. . . what kind of deal I cut or how long I go or what my life is like after that I don't know."

19. On or about June 24, 2008, in a consensually recorded meeting in New York, New York, JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendant, and CI-1 again discussed problems with GSA Investors, LLC, as well as other WexTrust Capital projects. SHERESHEVSKY told CI-1 that he would raise money from investors through a new WexTrust Capital investment vehicle and divert that money to pay off investors in GSA Investors, LLC. SHERESHEVSKY said, "once I have that whole thing done and raised I believe I can take care of GSA, I can take care of . . . any other problem that we have. I have no problem telling people [other WexTrust Capital investors], 'go fuck yourself you lost your money . . . .'" When CI-1 told SHERESHEVSKY, "there's $4 million dollars of escrow missing" from another WexTrust Capital investment vehicle, SHERESHEVSKY similarly proposed that he would pay back the $4 million dollars to that investment vehicle and also pay back GSA investors by diverting funds he raised from investors in the new WexTrust Capital investment vehicle.

20. On or about July 2, 2008, in a consensually recorded conversation, STEVEN BYERS, the defendant, told C1-1 that BYERS would begin communicating with the GSA investors once he had money to "start paying them off."

21. STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants,

also discussed with CI-1 WexTrust Capital's purported Africa diamond mine investments to generate the necessary money to repay investors in GSA Investors, LLC:

   a. On or about November 19, 2007, SHERESHEVSKY sent an e-mail to CI-1, with a copy to BYERS, in which SHERESHEVSKY wrote, in part:

> As of today the company owes Africa about 575,000 that is outstanding. The company owes me quite a bit of money including 200,000 I lent them this morning so we can cover payroll including yours.
>
> The reason why it is more important to pay back Africa is because our only hope of getting out of our mess is Africa. . . . We are in debt and I am working diligently to get us out of it. Go ahead and do a forensic audit. It will show you that we spend about 1,000,000 more a month than we make, for the last 3 years especially the last 19 months. . . .

   b. On or about June 24, 2008, in a consensually recorded conversation, BYERS told CI-1, "I got to get enough money out of the diamond mine to pay GSA."

   c. On or about July 18, 2008, in a consensually recorded conversation, BYERS reiterated to CI-1 that WexTrust Capital's investments in purported African diamond mines "has to pay GSA." BYERS also encouraged CI-1 to disclaim any knowledge of the diversion of funds if GSA investors asked CI-1 questions.

### **THE CONSPIRACY**

  22. From in or about May 2005, up to and including in or about August 2008, in the Southern District of New York and

elsewhere, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, together with others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (a) to commit securities fraud, in violation of Sections 78j(b) and 78ff of Title 15, United States Code, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) mail fraud, in violation of Title 18, United States Code, Section 1341.

## OBJECTS OF THE CONSPIRACY

### Securities Fraud

23.  It was a part and an object of the conspiracy that STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, would and did use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in

the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Mail Fraud

24. It was further a part and an object of the conspiracy that STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things, to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom such matters and things and knowingly would and did cause to be delivered by mail and such carriers according to direction thereon, such matters and

things, all in violation of Title 18, United States Code, Section 1341.

## MEANS AND METHODS OF THE CONSPIRACY

25. Among the means and methods by which STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, together with others known and unknown, would and did carry out the conspiracy were the following:

    a. BYERS, SHERESHEVSKY, and others raised money from investors pursuant to private placement offerings.

    b. BYERS, SHERESHEVSKY, and their co-conspirators diverted the majority of investor funds in GSA Investors, LLC by using them for purposes other than those specified in the private placement memoranda pursuant to which the funds were raised, and failed to disclose this diversion of funds to investors.

    c. BYERS, SHERESHEVSKY, and their co-conspirators caused and attempted to cause WexTrust Capital and its representatives to make materially false, fraudulent and misleading statements in private placement documents that were distributed to investors that materially misstated, among other things, WexTrust Capital's expenditures and income related to GSA Investors, LLC.

    d. BYERS, SHERESHEVSKY, and their co-conspirators created or caused to be created false and fraudulent documents

that falsely purported to reflect profits earned by WexTrust Capital investors.

   e. BYERS, SHERESHEVSKY, and others used facilities of interstate commerce, including interstate telephone calls and interstate wire transfers, as well as the mails, in furtherance of the objects of the conspiracy.

### OVERT ACTS

   26. In furtherance of said conspiracy and to effect the illegal objects thereof, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

   a. On or about November 9, 2006, a WexTrust employee mailed a letter to an investor in GSA Investors, LLC, in the Bronx, New York, containing the Operating Agreement of GSA Investors, LLC.

   b. In or about 2007, a WexTrust employee mailed a letter to an investor in GSA Investors, LLC, in the Bronx, New York, containing a 2006 IRS Schedule K-1 form reflecting "income" from GSA Investors, LLC.

   c. In or about 2007, a WexTrust employee mailed a letter to an investor in GSA Investors, LLC, in Westchester

County, New York, containing a 2006 IRS Schedule K-1 form reflecting "income" from GSA Investors, LLC.

       d.    On or about November 19, 2007, SHERESHEVSKY sent an e-mail to BYERS and CI-1.

       e.    On or about April 13, 2008, a WexTrust employee mailed a letter to an investor in GSA Investors, LLC, in the Bronx, New York, containing a 2007 IRS Schedule K-1 form reflecting "income" from GSA Investors, LLC.

       f.    On or about June 24, 2008, SHERESHEVSKY met with CI-1 in New York, New York, to discuss problems with GSA Investors, LLC, as well as other WexTrust Capital projects.

       g.    On or about June 24, 2008, BYERS spoke on the telephone with CI-1 about problems with GSA Investors, LLC.

       h.    In or about 2008, a WexTrust employee mailed a letter to an investor in GSA Investors, LLC, in the Bronx, New York, containing a quarterly report for GSA Investors, LLC.

       i.    In or about 2008, a WexTrust employee mailed a letter to an investor in GSA Investors, LLC, in the Bronx, New York, containing a "cash flow statement" for GSA Investors, LLC.

       (Title 18, United States Code, Section 371.)

## COUNT TWO

(Securities Fraud)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 21, and 25 and 26 of this Indictment are realleged and incorporated as if fully set forth herein.

28. From in or about May 2005, up to and including in or about August 2008, in the Southern District of New York and elsewhere, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges did use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other

persons, in connection with the purchase and sale of preferred membership interests in GSA Investors, LLC.

> (Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

### FORFEITURE ALLEGATION

29. As a result of committing one or more of the foregoing offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Section 371; and Title 17, Code of Federal Regulations, Section 240.10b-5, as alleged in Counts One and Two of this Indictment, STEVEN BYERS and JOSEPH SHERESHEVSKY, a/k/a "Joseph Heller," a/k/a "Josie," a/k/a "Yossi," the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the fraud offenses, including but not limited to a sum of money in the amount of $9,200,000.

### Substitute Assets Provision

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (i)    cannot be located upon the exercise of due diligence;

    (ii)        has been transferred or sold to, or deposited with, a third party;

    (iii)       has been placed beyond the jurisdiction of the court;

    (iv)        has been substantially diminished in value; or

    (v)         has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

    (Title 15, United States Code, Sections 78j(b), 78ff;
Title 18, United States Code, Sections 371 and 981;
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461;
and Title 17, Code of Federal Regulations,
Section 240.10b-5.)

_____
Foreperson

_____
MICHAEL J. GARCIA
UNITED STATES ATTORNEY

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

STEVEN BYERS, and
JOSEPH SHERESHEVSKY,

Defendants.

## INDICTMENT

08 Cr.

(Title 18, United States Code,
Section 371; 15 U.S.C. §§ 78j(b), 78ff;
17 C.F.R. § 240.10b-5; 18 U.S.C. § 2)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

Foreperson.